## TROY AND NORTH CAROLINA GOLD MINING COMPANY v. SNOW LUMBER COMPANY, C. M. MEISENHEIMER ET ALS.

(Filed 1 December, 1915.)

### 1. Pleadings—Speaking Demurrers.

A demurrer which denies the allegations of the complaint raises issues of fact and partakes of the nature of a speaking demurrer, which will not be sustained.

### 2. Same—Parties—Appearance—Publication.

When it is alleged in the complaint that the necessary parties are unknown to the plaintiff, but that service by publication has been made on all who have not appeared and made themselves such, it is sufficient, and a demurrer on the ground that it appears therefrom that sufficient parties to the suit have not been made will be overruled.

### 3. Deeds and Conveyances—Interpretation—Trusts and Trustees.

A deed will be construed as a whole so as to give a meaning to every part thereof, when permissible, without special regard for its formal arrangement, so as to effectuate the intent thereof; and a deed to E. and certain others, trustees of the T., etc., corporations, with habendum, "to have and to hold the above described tracts of land to them, the above mentioned trustees, their heirs and assigns forever," is held to convey the lands to the parties designated as trustees for the corporations named.

### 4. Courts—Jurisdiction—Trusts and Trustees.

The Superior Court has jurisdiction to appoint new trustees for those named in a deed in trust of lands when necessary to preserve the trust estate, which may be done in an action asking for other relief.

### 5. Equity—Title—Parties—Trespass.

The owners of the equitable title to lands can maintain their action for recovery thereof and for damages against the wrongdoer, without the necessity of first having new trustees appointed by the courts in the place of those who are dead or whose whereabouts are unknown.

### 6. Pleadings—Demurrer—Limitation of Actions—Laches.

The plea of the bar of the statute of limitations, raised in this case by demurrer to the complaint, cannot be entertained; nor will the question of laches, as there are no facts established upon which the Supreme Court can pass intelligently.

### 7. Uses and Trusts—Statutes—Title.

Where lands are conveyed to trustees, without specifying any conditions, the statute will execute the trust by transferring the possession to the use, and the *cestui que trust* will acquire the entire estate.

### 8. Deeds and Conveyances—Trusts and Trustees—Beneficiaries—Misnomer—Parol Evidence.

The identity of a person named as a beneficiary of a trust created by deed may be shown by parol evidence, where it is at most a misnomer or latent ambiguity, and it is apparent that the claimant was the person intended.

APPEAL by defendants from *Shaw, J.,* at April Term, 1915, of MONT-GOMERY.

Civil action heard on demurrer.

Plaintiff alleges in the complaint that on 1 August, 1866, James Crump, by deed duly executed and registered, conveyed to it, but by the name of the Troy (N. Y.) and North Carolina Gold Mining Company, four tracts of land in Montgomery County, this State, which are fully described in the deed which was made to Charles Eddie and eight others, trustees of the Troy (N. Y.) and North Carolina Gold Mining Company, as appears by the premises of the deed, and in the *habendum* as follows: "To have and to hold the above described tracts of land to them, the above mentioned trustees, their heirs and assigns forever." It is further alleged that the name of the company, as it appears in the deed, was inserted by inadvertence and the mutual mistake of the parties and the draftsman of the deed, and it was intended to stand for and be the name of the plaintiff, and should be considered as such, as at the time there was no corporation having the name of the Troy (N. Y.) and North Carolina Gold Mining Company, the only company having a name at all like that one being the plaintiff in this action, and that it was the intention of the parties to the deed to convey the land to said trustees to be held by them for this plaintiff, and they acted as such for plaintiff in taking the deed, and if said intention is not fairly expressed in said deed, the statement thereof was omitted by the mutual mistake of the parties. It is also alleged that the trustees are all dead and their heirs or devisees are unknown to the plaintiff, except four of them, who have been made parties as defendants to this action, and those who are unknown have been brought in by publication, and still others who reside in this State have been personally served with process. The plaintiff alleges that the legal effect of the deed is to vest the title to the land in the plaintiff, but if this is not so, plaintiff is entitled to have new trustees appointed and a conveyance of the legal title ordered by the court. It is further alleged that defendants are in possession of the land and unlawfully withhold the same from the plaintiff and have wrongfully cut valuable timber therefrom, to plaintiff's damage, and it prays for general and special relief.

Defendant demurred upon the following grounds:

1. That the heirs and devisees of the trustees, who are dead, have not been made parties to the action.

2. That the land is conveyed by the deed to certain persons, as trustees, and their heirs and devisees, and there is no allegation that this was done by inadvertence or mistake, and, therefore, it appears that plaintiff has no interest in the land.

3. That the grantees named in the deed are all dead, and no new trustees have been appointed to act in place of them.

4. It appears that this action was brought many years after the execution of the deed, for a correction thereof, by converting the persons named therein as grantees into trustees for the plaintiff, notwithstanding that said grantees are dead and their heirs and devisees have not been made parties.

5. That the complaint fails to state facts sufficient to constitute a cause of action in favor of plaintiff and against the defendants who have been made parties to this action.

6. That there is a defect of parties in that it appears that the grantees named in said deed are dead and their heirs or devisees have not been made parties to the action.

The court overruled the demurrer and allowed defendants to answer, and they appealed from the order of the court overruling their demurrer.

*R. T. Poole, U. L. Spence and Harold T. Hathaway for plaintiffs. Jerome & Jerome for defendants.*

WALKER, J., after stating the case: We will consider the grounds of demurrer in the order of their statement by the defendant.

First. It will be observed from the above synopsis of the complaint and demurrer that the latter raises issues of fact rather than questions of law, by simply denying the allegations, and, in this respect, it partakes somewhat of the nature of a speaking demurrer, and is not confined to its true and limited function. As to the first ground of demurrer, it appears sufficiently that the heirs or devisees of the trustees have been made parties by personal service of process or by substituted service.

Second. It is substantially alleged in the complaint that if the deed really conveys the land to the individuals who are named as trustees, so as to vest the title in them and for themselves, and not as trustees of plaintiff, it was not the intention of the parties so to do, but to convey to them as trustees for the plaintiff, and if this is not expressed in the deed it resulted from the mutual mistake of the parties. But we think that the deed does convey the land to the trustees for the plaintiff. It is familiar learning that a deed, as well as any other instrument, must be construed as a whole and a meaning by construction given to every part thereof, and another rule is that it must be interpreted according to the intention of the parties, to be gathered from its words, and without special regard for its formal arrangement. *Brown v. Brown,* 168 N. C., 4, at p. 10, where we said: "Words shall always operate according to the intention of the parties, if by law they may, and if they cannot operate in one form they shall operate in that which by law shall effectuate the intention. This is the more just and rational mode of expounding a deed, for if the intention cannot be ascertained, the rigor-

ous rule is resorted to from the necessity of taking the deed most strongly against the grantor. Courts are always desirous of giving effect to instruments according to the intention of the parties, as far as the law will allow. It is so just and reasonable that it should be so that it has long grown into a maxim that favorable constructions are to be put on deeds. Hence, words, when it can be seen that the parties have so used them, may be received in a sense different from that which is proper to them; and the different parts of the instrument may be transposed in order to carry out the intent." Citing numerous cases, among them *Campbell v. McArthur,* 9 N. C., 38; *Kea v. Robeson,* 40 N. C., 373; *Gudger v. White,* 141 N. C., 507; *Triplett v. Williams,* 149 N. C., 394. And in *Gudger v. White, supra:* "It is not difficult by reading the deed to reach a satisfactory conclusion as to what the parties meant, and we are required by the settled canon of construction so to interpret it as to ascertain and effectuate the intention of the parties. Their meaning, it is true, must be expressed in the instrument; but it is proper to seek for a rational purpose in the language and provisions of the deed and to construe it consistently with reason and common sense. If there is any doubt entertained as to the real intention we should reject that interpretation which plainly leads to injustice, and adopt that one which conforms more to the presumed meaning, because it does not produce unusual and unjust results. All this is subject, however, to the inflexible rule that the intention must be gathered from the entire instrument, 'after looking,' as the phrase is, 'at the four corners of it.' An effort should be made to give some meaning, and the correct one, to the deed, if possible. If the effort is doomed to failure by reason of uncertainty or repugnancy, so that we cannot ascertain the meaning by any fair rule of construction, or by reason of its ambiguity of expression, so that we are unable to understand, from the language of the deed, who are the parties or what is the subject-matter, or, if they be known, what estate is conveyed, or any other matter essential to its validity, the instrument, of necessity, must fail." Citing *Kea v. Robeson, supra; Real Estate Co. v. Bland,* 152 N. C., 225; *Puckett v. Morgan,* 158 N. C., 344. Applying this rule of construction to the deed in question, we entertain no doubt that the meaning of the parties was to convey the land to the persons named, in trust for the plaintiff.

Third. The object of this suit is to have new trustees appointed in place of those whose names appear in the deed, and the court below had jurisdiction of the case and the power to grant the relief. It was held in *Roseman v. Roseman,* 127 N. C., 494, 497, where a somewhat similar question was raised: "The Superior Court undoubtedly had authority, under its general equity jurisdiction, to appoint a new trustee to prevent a failure of the trust, if the proceeding had begun by writ returnable to that court." It was not necessary, therefore, that trustees should

have been appointed in a separate proceeding before this suit was brought.

Fourth. We doubt if any correction of the deed is necessary, as this action is for the recovery of the possession of land and damages for a trespass thereon, and, as against a wrongdoer, plaintiff can recover on its equitable title. *Shannon v. Lamb,* 126 N. C., 47; *Hinton v. Moore,* 139 N. C., 44. In *Murray v. Blackledge,* 71 N. C., 492, it was held that the equitable owner of land may maintain an action for its recovery although the legal estate is in his trustee; and to the same effect are these cases: *Farmer v. Daniel,* 82 N. C., 152; *Ryan v. McGehee,* 83 N. C., 500; *Condry v. Cheshire,* 88 N. C., 375. Whether the plaintiff's cause of action is barred by laches or the statute of limitations is a question which is not now before us. The bar of the statute of limitations cannot be raised by demurrer, and, as to laches, there is nothing in the present stage of the case that will enable us to pass upon that question. It may be different when the facts are fully disclosed, but we do not know now what they will be.

As the deed created a passive, as distinguished from an active, trust, there being nothing for the trustees to do but to hold the legal title for the corporation, the use was executed by the statute, or, in other words, possession was transferred to the use, and the corporation thereby acquired the entire estate. *Johnson v. Prairie,* 91 N. C., 159; *Hallyburton v. Slagle,* 130 N. C., 482; *Cameron v. Hicks,* 141 N. C., 21.

As to the plaintiff being described by the wrong name in the deed, this is at most but a misnomer or latent ambiguity, which can be explained by parol evidence so as to fit the description to the person or corporation intended. *Institute v. Norwood,* 45 N. C., 65; *Ryan v. Martin,* 91 N. C., 465; *Asheville Division v. Aston,* 92 N. C., 579, 584; *Simmons v. Allison,* 118 N. C., 776; *Keith v. Scales,* 124 N. C., 497; *Walker v. Miller,* 139 N. C., 448. A misnomer does not vitiate, provided the identity of the corporation with that intended to be named by the parties is apparent. Angell & Ames Corp., secs. 185, 234; Morawetz Corp., 181. "The name of a corporation frequently consists of several words, and an omission or alteration of several of them is not material." Angell & Ames Corp., sec. 99. "A grant of land from an individual to a corporation will be good if it can be clearly discovered from the terms of it what corporate body was intended, though an omission or mistake in the corporate name may have been made." *Asheville Division v. Aston, supra;* citing Grant Corp., 51. *Ryan v. Martin, supra,* is very much in point here, for here it was said: "The objection that the corporation in question was sometimes called the 'Deep River Mining Co.' and 'Deep River Copper Mining Co.,' and other like names, is not well founded. A corporate name is essential, but the inadvertent or mistaken use of the name is ordinarily not material if the parties really intended

the corporation by its proper name. If the name is expressed in the written instrument, so that the real name can be ascertained from it, this is sufficient; but if necessary, other evidence may be produced to establish what corporation was intended. And the same rule applies to devises and bequests to corporations. A misnomer of a corporation has the same legal effect as a misnomer of an individual."

Fifth. The fifth and sixth grounds of demurrer have been fully met by what we have already said in regard to the others.

The decision of the court in overruling the demurrer was correct, and we affirm its order. We do not sustain the plaintiff's contention that the demurrer is frivolous and, being so, they are entitled to judgment; and the other part, therefore, permitting defendants to answer over, will stand, defendants to pay the costs of this Court.

Affirmed.